UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| POLO REALTY, INC. d/b/a ) <br> ROYAL PALM POLO SPORTS CLUB, ) <br>   ) <br>   Plaintiff - Judgment Creditor, ) <br>   ) <br> v.   ) <br>   ) <br> KRUSE INC., d/b/a KRUSE INTERNATIONAL, ) <br>   Defendant - Judgment Debtor AND ) <br> AUBURN AUCTIONS, LLC,   ) <br>   Successor-In-Interest to and ) <br>   Fraudulent Transferee from KRUSE INC. ) | Cause No.1:10-cv-00144-TLS |

**BRIEF IN SUPPORT OF MOTION
FOR IMMEDIATE INSPECTION PURSUANT TO FRCP 34**

Comes now Plaintiff, Polo Realty, Inc. d/b/a Royal Palm Polo Sports Club, ("Royal Palm"), by and through undersigned counsel, which hereby submits its Brief in Support of Motion for Immediate Inspection as follows:

**I. Introduction**[1]

On May 14-17, 2010, a collector car auction, the *19th Annual Auburn Spring Motorfair Auction,* will be held in Auburn, Dekalb County, Indiana, at Kruse Action Park.  The auction company that holds that auction will earn substantial fees in the hundreds of thousands of dollars from the auction of unique vehicles that may never reach market again. Judgment Creditor - Plaintiff Royal Palm holds Judgments against Judgment-Debtor Defendant Kruse Inc. d/b/a Kruse International in the amount of **$ 250,799.38**.  Those Judgments have been validly filed in Indiana and

---

[1] Plaintiff's Affidavit [2] more fully sets forth all of the salient facts it and the Complaint [1] are fully incorporated herein by reference.

Further legal argument relevant to the emergent nature and propriety of this Motion may be found within Plaintiff's Motion for Preliminary Injunction, filed contemporaneously herewith.

served according to Indiana law.

However, in late April, 2010, Kruse Inc. d/b/a Kruse International ("Kruse") transferred the auctions rights to conduct the *19th Annual Auburn Spring Motorfair Auction* to a newly-formed company of Kruse insiders Diana Jernigan, a Kruse employee and Pension Plan Administrator and Drew Burns, Technology Specialist of Kruse. The transfer took place after the Judgments were issued in Florida, after they have been validly filed and served in Indiana, without contemporaneous and equivalent value changing hands. Kruse and Auburn have undertaken that transfer fraudulently, so as to conduct the *19th Annual Auburn Spring Motorfair Auction* and earn fees and commissions without having to satisfy the Judgments held by Plaintiff.

Yesterday, Plaintiff's counsel both in Florida and Indiana received a letter notification from Kruse counsel denying entry to the *19th Annual Auburn Spring Motorfair Auction* to counsel, its agents and any others acting on behalf of Plaintiff. **(See Exhibits A and B hereto).**[2]

Defendant Kruse is taking this action to secret assets to hinder and delay Plaintiff from collecting on the Judgments.

Therefore, Plaintiff Royal Palm therefore seeks entry to the grounds of the Kruse Auction Park at exit 126 of I-69 in Auburn , Indiana in order to inspect the assets of the Defendants, their financial records and auction records, observe the auction being conducted and otherwise ascertain the amount of funds generated and the identity of those parties involved with the *19th Annual Auburn*

---

[2] Plaintiff notes that the letter came from the offices of "Kruse & Kruse, P.C.", consisting of blood relatives of the owner of Debtor Kruse Inc., Dean V. Kruse, and further that the letter was written on behalf of "Auburn Cordage, LLC", a company which has as its Registered Agent Dean V. Kruse and which is located at the same address as Debtor Kruse Inc.

*Spring Motorfair Auction* currently occurring.[3]

## II. Background Facts

Plaintiff's Affidavit [2] more fully sets forth all of the salient facts it and the Complaint [1] are fully incorporated herein by reference.

Kruse is a Judgement Debtor, owing $250,799.38 pursuant to judgments (the "Judgments") obtained by Plaintiff Royal Palm in the State of Florida against Kruse. Those Judgments have been validly filed in the State of Indiana and served upon Kruse pursuant to Indiana Trial Rule 4.6 and IC 34-54-11-2. The Judgments were rendered against Kruse in late 2009 and early 2010. On or about March 4, 2010, Auburn Auctions, LLC was formed in Indiana and staffed with Kruse employees, who comprise its auction license holder and agent. Kruse had previously been the entity that held, for 18 consecutive years, the *Annual Spring Motorfair Auction* at Kruse Action Park in Auburn, Indiana. Kruse had previously but unsuccessfully attempted to enjoin Florida garnishment proceedings arising out the Judgments in Indiana.

---

[3] **FRCP 34.** A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative to **inspect, copy, test, or sample** the following items in the responding party's possession, custody, or control:

(A) **any designated documents or electronically stored information** — including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations — stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) **to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.** [emphasis added]

Kruse has the ability to earn substantial consulting fees from conducting auctions and earning buyer's premiums from collector car auctions. In an effort to avoid and defraud Judgment Creditor Plaintiff Royal Palm, in or about the end of April 2010, Kruse transferred all of its auctions previously scheduled to be held by Kruse to Auburn Auctions. That transfer was done in an effort to hinder, delay and defraud Royal Palm. That transfer was done to insiders (the pension plan administrator of Kruse and the technology specialist employee of Kruse) Kruse maintains control of the auction and is earning "consulting fees" from its occurrence. The transfer was concealed from Royal Palm.

The transfer was made a *after* the rendition of the Judgments in Florida, *after* Kruse had knowledge of the Judgments, and, upon information and belief, *after* the Judgments were validly filed in Indiana and served upon Kruse in Indiana. Kruse did not receive any equivalent value for the transfer. Kruse has ignored the orders of a court in Florida to comply with Royal Palm's collection efforts there and has been held in contempt for doing so.

### III.  Discussion

**1.      The Rule 24(a)(1) Request is de rigeur and Should Be Granted.**

As a general rule, federal courts must give state court judgments the same full faith and credit that those judgments would received in the rendering state court. 28 U.S.C. § 1738; *Friable v. Meyer,* 217 F.3d 928, (7th Cir. 2000). Because this Court has jurisdiction over the subject matter of the present case and over the Defendants, it should determine that it has the authority to grant the injunctive relief requested in Royal Palm's Complaint. In this case, Royal Palm has plead that it is a Florida corporation duly organized and existing under the laws of the State of Florida and has an address at 18000 JOG Road, Boca Raton, FL 33496. (Comal. at ¶ 7). Defendants are each Indiana

companies with their principal places of business in Indiana. (Comal. at ¶¶ 8 and 9). The amount in controversy, which is the total amount of the Judgments that Royal Palms seeks to enforce, is set forth in the Complaint at ¶ 1, is $250,799.38. Therefore, no matter what the nature of Plaintiff's claim, this Court has subject matter jurisdiction based on the complete diversity of the parties and because the amount in controversy exceeds $75,000.00 pursuant to 28 U.S.C. § 1332.

**2.     The Site Inspection Pursuant to FRCP 34(a)(2) is Necessary to Avoid Further Fraudulent Conduct.**

Plaintiff is seeking to prevent the further dissipation of a judgment-debtor's assets which will be generated starting today through May 16, 2010. The granting the site inspection is appropriate to avoid further fraudulent dissipation of assets described in Plaintiff's Affidavit [2] and in the Motion and Supporting Memorandum to Plaintiff's Motion for Preliminary Injunction.

The federal rule of civil procedure permitting parties to conduct site inspections, F.R.C.P. 34(a)(2), generally requires that parties grant each other site access for inspections. Any party who is denied site access may petition the court for an order compelling such access. It is in ruling on such a motion that the court would apply the following balancing test: In reviewing requests for orders compelling site access made pursuant to the Federal Rules of Civil Procedure, courts must weigh "the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *McKesson Corporation v. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D.C. Cir. 1999)(citations omitted). These considerations are appropriate here.

Plaintiff has requested a Preliminary Injunction to compel Defendants to pay over any and all proceeds of the auction occurring now. However, it is not clear whether the Court will grant that relief in time to prevent the dissipation of assets contemplated and there may be further proceedings

necessary to claw back the monies due Royal Palm.  In this case, inspection of the auction, its records and operation will prove invaluable to the parties and the Court in determining the proper amount to pay to Plaintiff.

3. **An Emergent Granting of a Rule 34 Document and Site Inspection is Appropriate Under the Circumstances.**

Plaintiff is entitled by statute to relief under § 17(3)( C ) of IUFTA, which provides:

> **IC 32-18-2-17  Remedies of creditor.**
>     Sec. 17. (a) In an action for relief against a transfer or an obligation under this chapter, a creditor, subject to the limitations in section 18 of this chapter, may obtain any of the following:
>      (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.
>       (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by IC 34-25-2-1 or any other applicable statute providing for attachment or other provisional remedy against debtors generally.
>      (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, any of the following:
>         (A) An injunction against further disposition by the debtor *or a transferee,* or both, of the asset transferred, its proceeds, or of other property.
>          (B) Appointment of a receiver to take charge of the asset transferred or of the property of the transferee.
>         ( C ) **Any other relief the circumstances require***.*
>       (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court orders, may levy execution on the asset transferred or its proceeds.

[emphasis added].

From the fraudulent conduct of the Defendants, it is clear that a Rule 34(a) emergency site and document inspection is appropriate here.  Additionally, as there may be further dissipation of assets to subsequent transferees, a Rule 34 inspection *now* will allow those transferees, and whether or not they took for value in good faith, to be identified.[4]

---

[4] IC 32-18-2-18*. Transferee's* defenses**, liability**, and protections provides in relevant part:

Therefore, it is both appropriate and in fact necessary in order to effectuate the intent of IUFTA that this Court order an immediate Rule34(a) inspection of the auction site and records *while the auction is going on this week* May 13-17, 2010.

Respectfully submitted,

 /s/ Barry L. Loftus
Barry L. Loftus (Attorney # 20993-79)
STUART & BRANIGIN LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Tel. (765) 423-1561
Fax (765) 742-8175
bll@stuartlaw.com

Avery S. Chapman, Esq.
*Pending Admission Pro Hac Vice*
FBN 517321
CHAPMAN & GALLE, PLC
13501 Southshore Blvd.
Suite 103
Wellington, FL 33414
Tel. (561) 798-1708
Fax (561) 798-1709
ascesq1@cs.com

---

(b) Except as otherwise provided in this chapter, to the extent a transfer is voidable in an action by a creditor under section 17(a)(1) of this chapter, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection ©, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
 (1) the ***first transferee*** of the asset or the person for whose benefit the transfer was made; or
 (2) ***any subsequent transferee*** other than a good faith transferee who took for value or from any subsequent transferee.
[emphasis added].

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the date below, a copy of the foregoing was filed on the CM/ECF system and thus notification of same was forwarded via email to the following counsel of record for Defendant Kruse Inc.  I also certify that a copy of the following was served via email upon counsel of record for Defendant Kruse Inc. as follows:

John R. Price, Esq.
Price-Owen Law
9000 Keystone Crossing
Suite 150
Indianapolis, Indiana 46240
john@pricelaw.com

                                                 /s/ Barry L. Loftus
                                                Barry L. Loftus (Attorney # 20993-79)

Dated: May 13, 2010